UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MARIO ENRIQUE LALAMA GOMEZ,
            Petitioner,

-against-                                                                    NOT FOR PUBLICATION
                                                                                      **MEMORANDUM & ORDER**
UNITED STATES OF AMERICA,                                      24-cv-7850 (CBA)
            Respondent.
-------------------------------------------------------------x

**AMON, United States District Judge:**

Petitioner Mario Enrique Lalama Gomez ("Lalama Gomez") was ordered extradited to Ecuador pursuant to 18 U.S.C. § 3184 by the Honorable Lara K. Eshkenazi, United States Magistrate Judge. (ECF Docket Entry ("D.E.") # 1 Ex. 2 ("M&O") 1.[1] Before me is Lalama Gomez's habeas corpus motion pursuant to 18 U.S.C. § 2241. (D.E. # 1 ("Pet. Mem.").) Lalama Gomez asks me to invalidate Magistrate Judge Eshkenazi's order and block his extradition. Having reviewed Magistrate Judge Eshkenazi's determination, I find no error. Accordingly, I DENY Lalama Gomez's petition.

## BACKGROUND

On July 10, 2024, the Government filed a complaint requesting that Lalama Gomez be extradited to Ecuador. (Id.) That complaint alleged that Lalama Gomez, a dual American and Ecuadorian citizen, had repeatedly "obscenely touch[ed] [the] private parts, breasts, and vagina" of a 10-year-old Ecuadorian child between August 2016 and September 2017. (Id. 1-2.)

On October 8, 2024, Magistrate Judge Eshkenazi held a hearing on the Government's extradition request. (Id. 2.) She had to determine whether three conditions were met: (1) "whether a valid treaty exist[ed];" (2) "whether the crime charged [was] covered by the relevant treaty;" and

---

[1] This decision is reported at Matter of Extradition of Lalama Gomez, __ F. Supp. 3d __, 2024 WL 4646959 (E.D.N.Y. Nov. 1, 2024).

1

(3) "whether the evidence marshaled in support of the complaint for extradition [was] sufficient under the applicable standard of proof," which is probable cause. Cheung v. United States, 213 F.3d 82, 88 (2d Cir. 2000). At that hearing, Magistrate Eshkenazi considered, among other evidence, submissions from the United States and Ecuadorian governments attesting that Lalama Gomez's alleged conduct constituted an extraditable offense and statements from the alleged victim and her mother describing that conduct. (M&O 2-3, 14-15.)

On November 1, 2024, Magistrate Judge Eshkenazi determined that all three conditions were met, "certifie[d] the extradition" of Lalama Gomez, and "order[ed] Lalama Gomez to remain in the custody of the United States Marshal pending further decision on extradition and surrender by the Secretary of State." (Id. 17.) On November 12, 2024, Lalama Gomez filed a petition seeking a writ of habeas corpus, requesting that I prevent his extradition. (Pet. Mem.)

## STANDARD OF REVIEW

An extradition order "may only be reviewed by a petition for a writ of habeas corpus under 28 U.S.C. § 2241." Skaftouros v. United States, 667 F.3d 144, 157 (2d Cir. 2011). The reviewing court may only consider (1) "whether the magistrate had jurisdiction," (2) "whether the offense charged is within the treaty," and (3) "whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." Id. (quoting Fernandez v. Phillips, 268 U.S. 311, 312 (1925)). The petitioner has the burden of proving by a preponderance of the evidence that the extradition order is not consistent with law. Id. at 158; Bisram v. United States, 777 F. App'x 563, 565-66 (2d Cir. 2019).

## DISCUSSION

Lalama Gomez does not dispute that Magistrate Judge Eshkenazi had jurisdiction to decide the question of whether he could be extradited to Ecuador. (Pet. Mem. 8.) So I address the

2

remaining two questions set out in Skaftouros, as well as Lalama Gomez's miscellaneous arguments.

## I. Sexual Abuse Is Covered by the Relevant Extradition Treaty

Extradition treaties are to be "liberally, not strictly, construed." Factor v. Laubenheimer, 290 U.S. 276, 303 (1933); Skaftouros, 667 F.3d at 155-56 (applying this principle). Ultimately, it is a court's "responsibility to give the specific words of [a] treaty a meaning consistent with the shared expectations of the contracting parties." Air France v. Saks, 470 U.S. 392, 399 (1985); see Sumitomi Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 184 (1982) ("Our role is limited to giving effect to the intent of the Treaty parties.").

Lalama Gomez argues that his alleged offense is not covered by the United States' extradition treaty with Ecuador. He acknowledges that the treaty enumerates rape as an extraditable offense, but argues that it does not encompass sexual abuse, the offense with which he is charged in Ecuador. (Pet. Mem. 10-11.) Lalama Gomez observes that Ecuadorian law distinguishes between the two offenses: it defines rape as the commission of "carnal access" via penetration, whereas it defines sexual abuse as the commission of nonconsensual sexual acts "without there being penetration or carnal access." (D.E. # 1 Ex. 5 ("Crim. Code") art. 170-71.)

Lalama Gomez's argument fails for two reasons. First, as Magistrate Judge Eshkenazi noted, even if an offense is not enumerated in an extradition treaty, extradition is permissible if "the underlying conduct constitutes an extraditable offense." (M&O 11 (quoting In re Extradition of Handonovic, 829 F. Supp. 2d 979, 989 (D. Or. 2011)); see Sacirbey v. Guccione, 2006 WL 2585561, at *8 (S.D.N.Y. Sept. 7, 2006) ("While abuse of authority is not specifically enumerated in the Treaty, it need not be to qualify as an extraditable offense, so long as [it] is sufficiently equivalent to one or more of the twelve categories [of offenses] listed . . . ."), rev'd on other

3

grounds, 589 F.3d 52 (2d Cir. 2009). The 1873 United States-Ecuador treaty provides for extradition for "[t]he crime of rape," and the 1941 supplementary treaty provides for extradition for attempted rape. (D.E. # 1 Ex. 3 ("Treaty") 3, 6.) Under Ecuadorian law, rape may be committed with "the introduction, vaginally, or anally, of objects, fingers, or organs other than the virile member, to a person of either sex." (Crim. Code. art. 171.) The alleged conduct in this case includes Lalama Gomez "putting his fingers in [the victim's] anus and vagina." (M&O 11-12.) Thus, even though Lalama Gomez is not being extradited to Ecuador to face trial for rape, I agree with Magistrate Judge Eshkenazi that his conduct is sufficiently equivalent to that offense (or, at the very least, an attempt to commit that offense), making extradition permissible.

Second, the United States-Ecuador extradition treaty must be construed consistent with the intent of its signatories. The Supreme Court has observed in dicta that "[t]he clear import of treaty language controls unless 'application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories.'" Avagliano, 457 U.S. at 180 (quoting Maximov v. United States, 373 U.S. 49, 54 (1963)); see Bruyea v. United States, 174 Fed. Cl. 238, 242 (Fed. Cl. 2024) (noting that while treaty interpretation begins with the text, "there is a notable difference from [the interpretation of] other legal instruments: courts are encouraged to consider a treaty's purpose, as well as extrinsic evidence of the intent of the parties to the treaty"). In United States v. Lazarevich, the Ninth Circuit applied this principle. 147 F.3d 1061 (9th Cir. 1998). There, the question was whether a defendant extradited from the Netherlands could receive a sentencing enhancement for conduct not covered by the United States-Netherlands extradition treaty, even though that treaty provided that an extradited person could not be "punished . . . for an offense other than that for which extradition has been granted." Id. at 1063 (citation omitted). Citing Avagliano, the court determined that even if "the plain meaning of

4

punishment [were] interpreted to preclude consideration of other criminal behavior in sentencing," such an interpretation "would seem to effect a result inconsistent with the intent of at least the United States" and would thus be impermissible. Id. at 1064 (quotation omitted).

In determining the intent and expectations of the signatories in this case, I consider the "the postratification understanding of the contracting parties" to this treaty. Zicherman v. Korean Air Lines Co., Ltd., 516 U.S. 217, 226 (1996). "[B]oth the United States Department of State and National Court of Justice in Ecuador" have attested that in their view, sexual abuse is covered by the treaty's rape provision. (M&O 10.) Accordingly, it would undermine the expectations of both signatories to the United States-Ecuador extradition treaty to find that the treaty does not provide for extradition in cases of sexual abuse. These expectations are not merely theoretical; the United States and Ecuador have successfully sought extradition to Ecuador for sexual abuse under the same provision at issue in this case. See Cordero-Rezabala v. United States, No. 24-4010 (BRM), 2024 WL 1673366, at *4 (D.N.J. April 18, 2024).

Lalama Gomez complains that Magistrate Judge Eshkenazi "refused to heed" an Ecuadorian attorney's affidavit which attested that extradition was inappropriate because rape and sexual abuse were discrete offenses and Lalama Gomez could only be tried for the former under Ecuadorian law. (Pet. Mem. 12-13.) But Magistrate Judge Eshkenazi correctly declined to consider this evidence because Lalama Gomez was only permitted to produce evidence which "explain[ed] rather than contradict[ed] the demanding country's proof." Shapiro v. Ferrandina, 478 F.2d 894, 905 (2d Cir. 1973) (quoting United States ex rel. Petrushansky v. Marasco, 325 F.2d 562, 567 (2d Cir. 1963)). Moreover, even accounting for the affidavit, the proper inquiry is

whether sexual abuse, the crime for which Lalama Gomez will be tried, is encompassed by the extradition treaty's rape provision. For the reasons I have set out above, I find that it is.[2]

## II. Evidence Supports Magistrate Judge Eshkenazi's Finding of Probable Cause

Probable cause exists for extradition when the "evidence presented supports a reasonable belief" that the fugitive is "guilty of the crimes charged." Austin v. Healey, 5 F.3d 598, 605 (2d Cir. 1993) (cleaned up). Extradition hearings are not bound by the Federal Rules of Evidence; "unsworn statements of absent witnesses" are admissible in these proceedings. Collins v. Loisel, 259 U.S. 309, 317 (1922); see Melia v. United States, 667 F.2d 300, 302 (2d Cir. 1981). The evidence adduced at these hearings must simply be "reasonably trustworthy." United States v. Howard, 489 F.3d 484, 491 (2d Cir. 2007) (quoting Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)). The fugitive "may be permitted to offer explanatory testimony, but may not offer proof which contradicts that of the demanding country." Bisram, 777 F. App'x at 565 (quoting Messina v. United States, 728 F.2d 77, 80 (2d Cir. 1984)).

On habeas review, the district court must simply consider whether "'any evidence'" supports the magistrate judge's ruling, a standard which is "deferential to the magistrate judge's ruling." Leon Heras v. Warden, Metro. Det. Ctr., Brooklyn, No. 1:23-cv-5057 (EK), 2023 WL 8473838, at *2 (E.D.N.Y. Dec. 7, 2023) (quoting Bisram, 777 F. App'x at 567). One area in which the district court must be particularly deferential is credibility; it is "solely within the province of the extradition magistrate" judge to decide how to assess the credibility of evidence. Gil v. Imundi, 747 F. Supp. 1028, 1041 (S.D.N.Y. 1990) (quoting Quinn v. Robinson, 783 F.2d 776, 815-16 (9th

---

[2] Petitioner's argument that the rule of specialty "show[s] that the charged offense is not substantially analogous to the extraditable offense" (Pet. Mem. 15), is unavailing. The rule of specialty "generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country" and "is typically applied in cases where the fugitive is tried for a crime not enumerated in the applicable extradition treaty or agreement." United States v. Suarez, 791 F.3d 363, 366 (2d Cir. 2015) (cleaned up). To apply the rule of specialty presupposes that sexual abuse is not covered by the treaty. For the reasons set out above, I find that it is.

6

Cir. 1986)). The magistrate judge may choose not to "go beyond the face of the government's affidavits for purposes of determining credibility or reliability." Id.; see Shapiro, 478 F.2d at 905 ("The judge's refusal to examine the credibility of the testimony and statements included in the translated material was clearly proper, since the declarants were not before him. . . . Such a contest, the judge permissibly ruled, should properly await trial in [the country where the fugitive will face trial].").

In determining that probable cause existed to extradite Lalama Gomez for sexual abuse, Magistrate Judge Eshkenazi considered more than 200 pages of "clear and detailed allegations" set out in Ecuador's submissions. (M&O 14.) Those allegations included statements by the victim and her mother, as well as a psychological report drafted by Ecuadorian authorities. (Id.) Ecuadorian authorities alleged that "from August 2016 through September 2017, Lalama Gomez sexually abused the Victim and threatened to kill the Victim's [m]other and her brothers if the Victim told anyone about the abuse," which included Lalama Gomez "enter[ing] the Victim's room, obscenely touch[ing] her breasts and vagina, and kiss[ing] her while he masturbated." (Id.)

Lalama Gomez argues that Magistrate Judge Eshkenazi erred in finding probable cause because there is "no evidence corroborating [the victim's] testimony," because the victim's mother lacked credibility since she was once Lalama Gomez's girlfriend, and because "Ecuadorian authorities' forensic psychological report . . . fails to categorically link [the victim's] psychological issues to the alleged sexual abuse." (Pet. Mem. 17.) Lalama Gomez further claims that the victim's "hymen is intact, refuting any possibility of [r]ape" and cites a New York state court case which found a victim's uncorroborated allegations insufficient to sustain a rape conviction. (Id. 17-18.) Finally, Lalama Gomez argues that Magistrate Judge Eshkenazi erred by "refus[ing] to hear [Lalama Gomez]'s testimony" – which, Lalama Gomez says, would have been that the

7

victim's accusations were "nothing more than revenge against [Lalama Gomez] for leaving the Victim's Mother." (Id. 18.)

These arguments are unpersuasive. First, the victim's statements are corroborated by the statements of the victim's mother and the Ecuadorian authorities' psychological report. Magistrate Judge Eshkenazi properly prohibited Lalama Gomez from testifying about the purported lack of credibility of the victim's mother; statements which "only pose a conflict of credibility" should "properly await trial." Shapiro, 478 F.2d at 905. As I have noted above, it is not my place to second-guess Magistrate Judge Eshkenazi's decision to credit the victim's mother's statements. Second, Lalama Gomez's argument that "courts and juries in this country have often been skeptical of victims' uncorroborated allegations of sexual abuse," (M&O 17-18), misunderstands the inquiry at hand. Magistrate Judge Eshkenazi did not have to decide whether the evidence at hand sufficed to convict him; she only had to decide whether it sufficed to constitute probable cause. And my role is simply to determine whether there is any evidence that supports her determination. I find that there is.

### III. Lalama Gomez's Other Arguments Fail

#### A. There Is No Issue of Dual Criminality

Lalama Gomez argues that the doctrine of dual criminality should bar extradition in this case. Dual criminality is a requirement contained within some extradition treaties which requires that "the offense for which the fugitive is being extradited must be punishable under [both countries'] criminal law." Lo Duca v. United States, 93 F.3d 1100, 1111 (2d Cir. 1996). For dual criminality to exist, the extraditable offense must be "substantially analogous" to some offense in the extraditing country. Cordero-Rezabala, 2024 WL 1673366, at *3. Lalama Gomez claims that

8

sexual abuse in Ecuador is not substantially analogous to any offense in the United States. (Pet. Mem. 11.)[3]

Magistrate Judge Eshkenazi first observed that Ecuador's extradition treaty with the United States only requires dual criminality analysis for certain offenses, and rape – the offense in the treaty that Magistrate Judge Eshkenazi deemed to encompass sexual abuse – is not one of them. (M&O 12 n.2.) Moreover, even if a dual criminality analysis were necessary, Magistrate Judge Eshkenazi correctly noted that Defendant could have been successfully charged under a variety of federal and state statutes. The alleged conduct qualifies as knowing engagement in "a sexual act with another person without that person's consent," 18 U.S.C. § 2242, or "subject[ing] another person [under the age of 14] to sexual contact," New York Penal Law § 130.60. Thus, there is thus no issue of dual criminality.

### B. There Is No Applicable Exception to the Rule of Non-Inquiry

Lalama Gomez argues that Magistrate Judge Eshkenazi "erred by not applying an exception to the doctrine of non-inquiry and other humanitarian considerations." (Pet. Mem. 18) (cleaned up). The doctrine of non-inquiry is a "firmly established principle that precludes courts from examining the procedures or treatment awaiting the surrendered fugitive in the requested jurisdiction" on the basis that the executive branch is better suited to make this assessment. In re Extradition of Mujagic, 990 F. Supp. 2d 207, 227-28 (N.D.N.Y. 2013). In dicta in one case, the Second Circuit "imagine[d]" that there might be "procedures or punishment so antipathetic to a federal court's sense of decency as to require reexamination of [this] principle," Gallina v. Fraser,

---

[3] In his briefing, Lalama Gomez seems to conflate two inquiries: whether sexual abuse is an extraditable offense under the United States-Ecuador extradition treaty and whether dual criminality is met. (See Pet. Mem. 11 ("The charged offense of sexual abuse does not fall within the scope of the Treaty. Critically, while strict congruity of offenses is not necessary to meet the test of [dual] criminality, the offenses of the two countries must be substantially analogous.") (cleaned up).) Because dual criminality is entirely separate from whether the offense falls within the scope of an extradition treaty – the former requires an analysis of the extraditing country's criminal laws, whereas the latter simply requires an analysis of the treaty – I have addressed the two inquires separately.

9

278 F.2d 77, 79 (2d Cir. 1960), but Lalama Gomez cites no case in which any court has found this theoretical exception to apply. As far as I am aware, no such case exists. See Leon Heras, 2023 WL 8473838, at *4 ("[T]he Gallina court's posited exception to non-inquiry has never been applied to prevent federal certification of extradition.") (citations omitted).

Lalama Gomez alleges that "Ecuador's penitential system has been suffering a chronic crisis," including non-functional health services, violence, and torture. (Pet. Mem. 18-21.) Moreover, Lalama Gomez alleges that given that he will be extradited for a sex crime, is an American citizen, and has various health concerns, he will be particularly vulnerable. (Id. 20-21.) Magistrate Judge Eshkenazi decided that these alleged conditions were not so extreme as to take the unprecedented step of ignoring the doctrine of non-inquiry (M&O 16-17), and I agree. Just last year, Judge Komitee reached the same conclusion regarding the Ecuadorian system. See Leon Heras, 2023 WL 8473838, at *4 ("Although the Court is not insensitive to these disquieting issues [in Ecuador], such humanitarian concerns are generally within the province of the Secretary of State."). Magistrate Judge Eshkenazi did not err by refusing to make an exception to the rule of non-inquiry.

### C. Lalama Gomez Is Not Entitled to Serve a Potential Sentence in the United States

Magistrate Judge Eshkenazi did not err by declining to consider Lalama Gomez's request to "mak[e] [the] order of extradition conditional upon Ecuador returning Mr. Gomez to the United States to serve his prison sentence if convicted." See Inter-American Convention on Serving Criminal Sentences Abroad, June 9, 1993, O.A.S.T.S. No. 76 ("IAC").[4] Although the treaty's

---

[4] Available at https://www.oas.org/juridico/english/treaties/a-57.html and S. Treaty Doc. No. 104-35, 1995 WL 905075.

10

terms would require Lalama Gomez's consent in order for him to be transferred to the United States to serve his sentence, they do not entitle Lalama Gomez to such a transfer. IAC art. V.

## CONCLUSION

For these reasons, the Court DENIES Lalama Gomez's petition.

SO ORDERED.

Dated: February 10, 2025
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge