UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARIO ENRIQUE LALAMA GOMEZ,
                Petitioner,

  -against-

UNITED STATES OF AMERICA,
                Respondent.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
24-cv-7850 (CBA)

**AMON, United States District Judge:**

On November 1, 2024, the Honorable Lara K. Eshkenazi, United States Magistrate Judge, ordered Mario Enrique Lalama Gomez extradited to Ecuador to face a charge of sexual abuse. (ECF Docket Entry ("D.E.") # 1 Ex. 2 ("MJ M&O").) Lalama Gomez challenged Magistrate Judge Eshkenazi's decision via a petition pursuant to 28 U.S.C. § 2241. (D.E. # 1.) On February 11, 2025, I denied that petition. (D.E. # 9 ("DJ M&O").) Lalama Gomez now asks me to stay his extradition pursuant to Fed. R. App. P. 8(a)(1)(A) pending an appeal to the Second Circuit, or, in the alternative, to temporarily stay his extradition while he seeks a stay pending appeal from the Second Circuit. (D.E. # 13 ("Pet. Mot.").) For the reasons set out below, I GRANT Lalama Gomez's motion for a stay pending appeal.[1]

## DISCUSSION

A court deciding a motion for a stay "considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Nken v. Holder, 556 U.S. 418, 425-26 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). "The

---

[1] I also granted Lalama Gomez's request for a temporary stay while considering this motion. (See Text Order dated February 27, 2025.)

degree to which a factor must be present varies with the strength of the others; 'more of one [factor] excuses less of the other.'" SEC v. Daspin, 557 F. App'x 46, 48 (2d Cir. 2014) (alteration in original) (quoting Thapa v. Gonzales, 460 F.3d 323, 334 (2d Cir. 2006)). I apply the Nken factors below, addressing likelihood of success on the merits last since the degree to which Lalama Gomez must make that showing is determined by the balance of the remaining factors, see infra p. 5.

## I. Irreparable Harm to Lalama Gomez

A party seeking a stay must show that there is more than a mere "possibility of irreparable injury" absent a stay. Nken, 556 U.S. at 434-35 (quotation omitted). Lalama Gomez says he will "[u]nquestionably" be irreparably injured absent a stay because his extradition "would effectively moot his appeal, thereby denying him his right to appellate review." (Pet. Mot. 20.) Although the Second Circuit has not taken a position on whether the threat of extradition while appeal is pending constitutes irreparable harm, at least four other circuits have suggested as much. See Manrique v. Kolc, 65 F.4th 1037, 1041 (9th Cir. 2023) ("Irreparable injury is obvious: Once extradited, Toledo's appeal will be moot.") (citation omitted); Vitkus v. Blinken, 79 F.4th 352, 367 (4th Cir. 2023) (finding that a petitioner's "extradition during ongoing litigation" would "constitute irreparable harm"); Demjanjuk v. Meese, 784 F.2d 1114, 1118 (D.C. Cir. 1986) (noting that "the imminent extradition of petitioner to Israel may qualify as a threat of irreparable harm"); Quintanilla v. United States, 582 F. App'x 412, 414 (5th Cir. 2014) (assuming that "extradition while an appeal of the denial of habeas corpus is pending would constitute irreparable harm"). But see Venckiene v. United States, 929 F.3d 843, 864 (7th Cir. 2019) (finding that a fugitive's impending extradition did not constitute irreparable harm because the fugitive would "still have an opportunity to challenge the charges against her" in the extraditing country).

The Government responds that Lalama Gomez has not demonstrated irreparable harm "because the Secretary of State has not yet decided whether to extradite him at all." (D.E. # 15 ("Gov. Opp.") 12.) It points out that "Lalama Gomez may submit any materials and present any allegations he wishes to the Secretary of State," that "he has already done so," and that "the Secretary of State will assess any claims made by Lalama Gomez that extradition should be denied on humanitarian grounds, including mistreatment." (Id. 13.)

This argument misses the mark. Although the conditions Lalama Gomez claims he may face in Ecuador (D.E. # 16 ("Pet. Reply") 3) may not be proper for a court to consider in determining whether extradition is appropriate, they are relevant to his showing of irreparable harm. See Manrique, 65 F.4th at 1041 (finding that evidence that "extradition to Peru could put [a movant's] life at risk" and subject him to "dire" prison conditions strengthened that movant's showing of irreparable harm). The Government also argues that denying a stay pending appeal does not assure his immediate extradition (Gov. Opp. 12), but it changed course when it recently insisted that I should deny Lalama Gomez's motion because the State Department could approve his extradition "at any time." (D.E. # 17 ("Gov. Ltr.").) Thus, Lalama Gomez's concern that he may be extradited pending appeal is well-founded.

On balance, I find that Lalama Gomez has made a credible showing of irreparable harm should a stay not be granted.

## II. Public Interest

Two Nken factors – harm to the opposing party and the public interest – "merge when the Government is the opposing party." Nken, 556 U.S. at 435. The Government points out that "[i]t is important that the United States be regarded in the international community as a country that honors its agreements" under extradition treaties. (Gov. Opp. 15.) That is true; extradition results

3

in "promot[ing] relations between" the United States and its treaty partners and "enhanc[ing] efforts to establish an international rule of law and order." Artukovic v. Rison, 784 F.2d 1354, 1356 (9th Cir. 1986); see Manrique, 65 F.4th at 1044 (citing Artukovic approvingly). But a stay pending appeal does not necessarily undermine that interest. If the Second Circuit affirms my ruling, the United States' cooperation with Ecuador in extraditing Lalama Gomez will have been slightly delayed, not altogether denied.

The Government argues that such a delay is harmful because "[t]he statute of limitations is set to expire on September 19, 2025." (Gov. Opp. 13-14.) The Government represents that a majority of Ecuadorian courts would require that a final conviction be entered by that date. (Id. 14 n.3.) I do not find this argument compelling for several reasons. First, nearly three years passed between when "Ecuador submitted a formal extradition request for Lalama Gomez" and when the Government "filed a complaint seeking a warrant for Lalama Gomez's arrest." (Id. 4-5); see Yoo v. United States, No. 21-CV-6184 (CS), 2021 WL 6100609, at *2 (S.D.N.Y. Nov. 16, 2021) (determining that a six-year delay between South Korea requesting extradition and the Government "commenc[ing] the extradition case" before a magistrate judge diminished the showing of public interest). Although the Government purports to have an explanation for this delay, it has not provided that explanation to me. Second, if the Government is concerned about a prolonged appellate process, it may request that the Second Circuit set an expedited briefing schedule. See, e.g., Motion Order, Tatari v. Durust, No. 25-253 (2d Cir. Feb. 7, 2025) (granting such a request). Third, a prerequisite decision to Lalama Gomez's extradition – the Secretary of State's final determination as to whether to comply with Ecuador's request – has not yet been made. Supra p. 3. Staying extradition pending appeal will not prevent the Secretary from making that decision in the interim. See Manrique, 65 F.4th at 1040. Fourth, the public interest in prompt

extradition is balanced against the public interest in Lalama Gomez, a United States citizen, being assured of his ability to challenge his extradition in United States courts. See Martinez v. United States, No. 3:14-CV-174, 2014 WL 4446924, at *6 (M.D. Tenn. Sept. 9, 2014) ("In the context of a citizen facing extradition to another country, staying the extradition to allow him to seek appellate review . . . clearly is in the public interest."). But see Matter of Knotek, No. LA CV-139204 BRO (JCG), 2016 WL 4726537, at *7 (C.D. Cal. Sept. 8, 2016) (finding that the public interest favored prompt extradition and denying a stay despite the fugitive's status as a United States citizen).

The public interest only weakly, if at all, supports denying a stay.

### III. Likelihood of Success

Likelihood of success is "[t]he single most important factor" in determining whether to grant a stay. In re Taub, 470 B.R. 273, 278 (E.D.N.Y. 2012) (quotation omitted). When the party seeking a stay makes a strong showing on the other Nken factors, courts do not require its showing on likelihood of success to be strong. See Mohammed v. Reno, 309 F.3d 95, 102 (2d Cir. 2002) (determining that "[i]n the context of a stay of removal of an alien pending appeal of an adverse habeas decision," the balance of hardships significantly favored the alien, meaning that "the degree of likelihood of success on appeal need not be set too high"); Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (holding that if the "balance of hardships tip[s] decidedly toward" the party seeking a stay, that party need only show "sufficiently serious questions going to the merits to make them a fair ground for litigation") (quotation omitted).

Lalama Gomez provides three bases upon which he believes he is likely to prevail on appeal: first, that "the charge of sexual assault[2] is not an extraditable offense on these facts because

---

[2] I assume Lalama Gomez is referring to sexual abuse, the charge for which Ecuador seeks his extradition.

5

finding that it is requires acceptance of the complainant's hearsay [and] uncorroborated claim of penetration"; second, that his "expert's testimony should not have been excluded"; and third, that the Second Circuit might employ "a humanitarian exception to the rule of non-inquiry." (Def. Mot. 20.)

Although the latter two bases do not raise a serious question, the first is of more concern. The United States-Ecuador extradition treaty lists rape as an extraditable offense but not sexual abuse. (D.E. # 1 Ex. 3.) Rape and sexual abuse are discrete offenses in Ecuador; the former requires "[c]arnal access" and the latter covers nonconsensual sex acts "without there being penetration or carnal access." (Id. Ex. 5 ("Crim. Code") 1, 10.) Lalama Gomez claims that even though the victim alleged that he penetrated her anus with his finger, in Ecuador, a forensic report corroborating a claim of penetration is "legally required" in order to charge a defendant with rape, and no such report exists in this case. (Pet. Mot. 5-6.) Moreover, Lalama Gomez argues that I was overly deferential to the representations of Ecuador and the United States that sexual abuse is covered by the treaty's rape provision. (Pet. Reply 2.)

To be clear, I remain convinced that Lalama Gomez's alleged conduct falls within the ambit of the United States-Ecuador extradition treaty. First, sexual abuse did not have to be listed within the extradition treaty; Lalama Gomez's conduct simply had to be "sufficiently equivalent" to a listed offense, such as rape. (DJ M&O 3 (quotation omitted).) Magistrate Judge Eshkenazi based her finding of sufficient equivalence on the victim's allegations of penetration (MJ M&O 11-12), and Lalama Gomez has provided no authority suggesting that this determination did not properly rest with her. Even assuming arguendo that Ecuador requires a corroborating forensic report to charge a defendant with rape, that evidentiary requirement does not defeat sufficient equivalence between Lalama Gomez's conduct and rape. For example, in In re Extradition of

6

Sacirbegovic, a magistrate judge certified a fugitive's extradition to Bosnia and Herzegovina ("BiH") because his conduct was sufficiently equivalent to embezzlement, despite (1) the fact that the fugitive would not be tried under BiH's embezzlement statutes; (2) the fact that those embezzlement statutes contained an additional element; and (3) there being no showing that BiH prosecutors could prove that additional element. No. 03 CR. Misc., 2005 WL 107094, at *15 (S.D.N.Y. Jan. 19, 2005), rev'd on other grounds, 589 F.3d 52 (2d Cir. 2009). Second, in construing the extradition treaty "consistent with the intent of its signatories," it was proper to determine "the intent and expectations of the signatories in this case" and provide deference to those signatories. (DJ M&O 4-5.) Here, both the United States and Ecuador submitted that they interpreted the rape provision of the extradition treaty to encompass sexual abuse. (Id. 5.) Lalama Gomez cites no case in which a court has rejected the joint position of both treaty signatories that a certain offense is extraditable.

But, as I have set out supra §§ I-II, the balance of hardships clearly favors Lalama Gomez: the risk of irreparable harm to him should I deny a stay is much greater than the risk of harm to the public interest should I grant a stay. Lalama Gomez's showing of likelihood of success on the merits does not have to be "overwhelming." Thapa, 460 F.3d at 336. It is enough that the Second Circuit has yet to provide guidance on when a fugitive's conduct is sufficiently equivalent to conduct enumerated in a treaty, that Lalama Gomez has identified tension between the plain text of the treaty and the signatories' interpretation, and that courts occasionally decline to adopt the United States' interpretation of a treaty, see Sanchez-Llamas v. Oregon, 548 U.S. 331, 378 (2006) (Breyer, J., dissenting) (listing cases). Under these circumstances, "the costs outweigh the

benefits" of denying Lalama Gomez's motion. <u>Citigroup</u>, 598 F.3d at 35. Thus, I find that the <u>Nken</u> factors favor granting a stay pending appeal.[3]

## CONCLUSION

For these reasons, I GRANT Lalama Gomez's motion for a stay of extradition pending the Second Circuit's issuance of a mandate on his appeal. I note that the Government is not without remedies. If it wishes, the Government may move before the Second Circuit to vacate this stay, <u>see</u> <u>Mohammed</u>, 409 F.3d at 97-98, or seek an expedited briefing schedule, <u>see</u> <u>supra</u> p. 4.

SO ORDERED.

Dated: March 11, 2025
      Brooklyn, New York

                                                       Carol Bagley Amon
                                                       United States District Judge

---

[3] Because I have found that Lalama Gomez has demonstrated an adequate showing of likelihood of success on his first basis for appeal, I need not elaborate on my finding that the second and third bases do not raise serious questions, <u>see</u> <u>supra</u> p. 6.